FILED
2025 Jun-24  AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TIMBERLINE HOLDINGS III, LLC,** | ) |
| **TIMBERLINE TMG, LLC,  MARTIN** | ) |
| **DAMSKY, HEIDI DAMSKY, BHM** | ) |
| **VENTURE INVESTMENTS,** | ) |
| **BRONZE VALLEY CORP.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) Case No. 2025- |
| | ) |
| **YANAI ORON,  LIAD AGMON,** | ) |
| **VERTEX VI FUND L.P., INSIGHT** | ) |
| **PARTNERS XII, L.P., INSIGHT** | ) |
| **PARTNERS (CAYMAN) XII, L.P.,** | ) |
| **INSIGHT PARTNERS** | ) |
| **(DELAWARE) XII, L.P., INSIGHT** | ) |
| **PARTNERS XII (CO-INVESTORS), L.P.,** | ) |
| **INSIGHT PARTNERS XII** | ) |
| **(CO-INVESTORS)(B), L.P.,** | ) |
| **INSIGHT PARTNERS (EU) XII, S.C.SP.,** | ) |
| **GRACE SOFTWARE HOLDINGS III, LLC.** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Come now Plaintiffs, **TIMBERLINE HOLDINGS III, LLC, TIMBERLINE TMG, LLC,   MARTIN DAMSKY, HEIDI DAMSKY, BHM VENTURE INVESTMENTS, and BRONZE VALLEY CORP.** (hereinafter "Plaintiffs") and state and plead as follows in support of their Complaint against Defendants **YANAI ORON, LIAD AGMON, VERITEX VI FUND L.P., INSIGHT PARTNERS XII, L.P., INSIGHT PARTNERS (CAYMAN) XII, L.P., INSIGHT PARTNERS (DELAWARE) XII, L.P., INSIGHT PARTNERS XII (CO-INVESTORS), L.P.,**

**INSIGHT PARTNERS XII (CO-INVESTORS) (B), L.P., INSIGHT PARTNERS (EU) XII, S.C.SP. AND GRACE SOFTWARE HOLDINGS III, LLC:**

### JURISDICTION AND VENUE

1. This is a suit for violations of Securities Act of 1933 and the Securities and Exchange Act of 1934, as amended. Specifically, Section 10(b)(Rule 10(b)(5) by the Securities and Exchange Commission), Section 11 and Section 12(a)(2) which prohibit securities fraud.

2. The jurisdiction of this Court is invoked due to the federal questions at issue under 28 U.S.C. § 1331.

3. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred within this district.

4. Defendants have such contacts with this state that the prosecution of the action against the them in this state is not inconsistent with the constitution of this state or the Constitution of the United States.

5. The prosecution of the claims against the Defendants do not offend the notion of fair play and justice.

### PARTIES

6. Timberline Holdings III, LLC is an Alabama limited liability company whose principal office is in Birmingham, Jefferson County, Alabama. Timberline III, LLC does business in Birmingham, Jefferson County, Alabama. Timberline Holdings III, LLC was a purchaser of securities of Joonko Diversity, Inc. as defined in the Securities and Exchange Act of 1934.

7. Timberline TMG, LLC is an Alabama limited liability company whose principal office is in Birmingham, Jefferson County, Alabama. Timberline TMG, LLC does business in Birmingham, Jefferson County, Alabama. Timberline TMG, LLC was a purchaser of securities of Joonko Diversity, Inc. as defined in the Securities and Exchange Act of 1934.

8. Martin Damsky is a citizen of the United States over the age of nineteen (19) and is a resident of Birmingham, Jefferson County, Alabama. Martin Damsky was a purchaser of securities of Joonko Diversity, Inc. as defined in the Securities and Exchange Act of 1934.

9. Heidi Damsky is a citizen of the United States over the age of nineteen (19) and is a resident of Birmingham, Jefferson County, Alabama. Heidi Damsky was a purchaser of securities of Joonko Diversity, Inc. as defined in the Securities and Exchange Act of 1934.

10. BHM Venture Investments, LLC is an Alabama limited liability company whose principal office is in Birmingham, Jefferson County, Alabama. BHM Venture Investments, LLC does business in Birmingham, Jefferson County, Alabama. BHM Venture Investments, LLC was a purchaser of securities of Joonko Diversity, Inc. as defined in the Securities and Exchange Act of 1934.

11. Bronze Valley Corp. is an Alabama limited liability company whose principal office is in Birmingham, Jefferson County, Alabama. BHM Venture Investments, LLC does business in Birmingham, Jefferson County, Alabama. Bronze Valley Corp. was a

purchaser of securities of Joonko Diversity, Inc. as defined in the Securities and Exchange Act of 1934.

12. Yanai Oron is an Israeli citizen over the age of nineteen (19) and is a resident of Israel. Yanai Oron served as a board of director of Joonko Diversity, Inc. (hereinafter "Joonko") from early 2021 to 2024 and owed a duty to Joonko's shareholders. As a board member of Joonko, Oron had a duty to oversee and guide Joonko, ensuring its long-term success and acting in the best interests of its stakeholders. As a board of director, Orao's responsibilities included strategic planning, financial oversight, legal and ethical compliance, and leadership selection and evaluation. During the relevant time, Joonko had an office in Birmingham, Jefferson County, Alabama.

13. Liad Agmon is an Israeli citizen over the age of nineteen (19) and is a resident of Israel. Liad Agmon served as a board of director of Joonko Diversity, Inc. (hereinafter "Joonko") from May 2022 to 2024 and owed a duty to Joonko's shareholders. As a board member of Joonko, Agmon had a duty to oversee and guide Joonko, ensuring its long-term success and acting in the best interests of its stakeholders. As a board of director, Agmon's responsibilities included strategic planning, financial oversight, legal and ethical compliance, and leadership selection and evaluation. During the relevant time, Joonko had an office in Birmingham, Jefferson County, Alabama.

14. Vertex VI Fund L.P. (hereinafter "Vertex") is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Vertex invested in preferred A-1 stock of Joonko in or around May 24, 2021 and as a result Oron became a member of the board of directors of Joonko. During

the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Vertex agreed to indemnify Oron as a result of these actions.

15. Insight Partners XII, L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Insight Partners XII, L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners XII, L.P. agreed to indemnify Agmon as a result of these actions.

16. Insight Partners (Cayman) XII, L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Insight Partners (Cayman) XII, L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners (Cayman) XII, L.P. agreed to indemnify Agmon as a result of these actions.

17. Insight Partners (Delaware) XII, L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the State of Delaware. Insight Partners (Delaware) XII, L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners (Delaware) XII, L.P. agreed to indemnify Agmon as a result of these actions.

18. Insight Partners XII (Co-Investors), L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Insight Partners XII (Co-Investors), L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners XII (Co-Investors), L.P. agreed to indemnify Agmon as a result of these actions.

19. Insight Partners XII (Co-Investors)(B), L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Insight Partners XII (Co-Investors)(B), L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners XII (Co-Investors)(B), L.P. agreed to indemnify Agmon as a result of these actions.

20. Insight Partners (EU) XII, S.C.Sp. is a private fund registered with the Securities and Exchange Commission organized under the laws of Luxembourg. Insight Partners (EU) XII S.C.Sp. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners (EU) XII S.C.Sp. agreed to indemnify Agmon as a result of these actions.

18. Insight Partners XII (Co-Investors), L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Insight Partners XII (Co-Investors), L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners XII (Co-Investors), L.P. agreed to indemnify Agmon as a result of these actions.

19. Insight Partners XII (Co-Investors)(B), L.P. is a private fund registered with the Securities and Exchange Commission organized under the laws of the Cayman Islands. Insight Partners XII (Co-Investors)(B), L.P. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners XII (Co-Investors)(B), L.P. agreed to indemnify Agmon as a result of these actions.

20. Insight Partners (EU) XII, S.C.Sp. is a private fund registered with the Securities and Exchange Commission organized under the laws of Luxembourg. Insight Partners (EU) XII S.C.Sp. invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners (EU) XII S.C.Sp. agreed to indemnify Agmon as a result of these actions.

21. Grace Software Holdings III, LLC is a private fund registered with the Securities and Exchange Commission organized under the laws of Delaware. Grace Software Holdings III, LLC invested in preferred B stock of Joonko in or around May 31, 2022 and as a result Agmon became a member of the board of directors of Joonko. During the relevant time, Joonko's office was located at 110 12th Street N, Birmingham, Alabama 35203. Insight Partners (EU) XII S.C.Sp. agreed to indemnify Agmon as a result of these actions.

22. Insight Partners XII, L.P., Insight Partners (Cayman) XII, L.P., Insight Partners (Delaware) XII, L.P., Insight Partners XII (Co-Investors), L.P., Insight Partners XII (Co-Investors) (B), L.P., Insight Partners (EU) XII, S.C.Sp. and Grace Software Holdings III, LLC hereinafter referred to as "Insight".

## FACTUAL ALLEGATIONS

### Joonko's Purported Business Model

23. Joonko Diversity, Inc. ("Joonko") was founded in 2016 by Ilit Raz.

24. Joonko was created purportedly to help diverse and underrepresented job candidates find employment and assist companies in meeting their diversity, equity and inclusion ("DEI") goals.

25. Joonko's initial stated mission was to use artificial intelligence ("AI") and data to identify and solve unconscious gender and racial bias within companies by tapping into their workflow and task management platforms.

26. Joonko later purportedly sought to use AI to create a pool of "silver medalist" job candidates. The "silver medalist" candidates were purportedly underrepresented

candidates that made it to the final stages of a company's hiring process but did not secure the job offer. Using its automated technology, Joonko would purportedly match the underrepresented candidates with job opportunities at its customer companies to help the customers fulfill their diversity recruitment goals.

27. Joonko claimed its process worked by connecting with the applicant tracking systems of companies within the Joonko system to identify pre-qualified candidates and recommend them to other Joonko customers. Joonko further claimed that its process worked by allowing candidates that got to the final stage of interviewing with a company but failed to secure the offer to be sourced by other Joonko customer companies. Joonko also claimed that it targeted United States companies with at least 500 employees and 30 job openings at any given time and gaining diverse candidates through increasing Joonko's customer base.

## Joonko's Fundraising

28. From 2017 through 2022, Joonko engaged in multiple rounds of fundraising in exchange for equity ownership interests in Joonko.

29. Joonko issued  a series of convertible notes that investors, including the Plaintiffs, invested in during the period of 2017 and 2021, that  provided the seed funding for Joonko and converted into Series A preferred stock (of varying series) in conjunction with the Series A investment in 2021.

30. On June 15, 2022, Joonko field a Form D notice of an exempt offering for the Series B Offering of $17 million equity securities, claiming reliance on Rule 506(b) of the federal securities laws[1].

31. Raz promoted the Series B Offering in or around June 2022 through email blasts to existing investors and potential new investors, and successfully raised at least $17 million for Joonko.

32. Timberline Holdings III, LLC, and Timberline TMG, invested $603,614 in preferred seed 1 stock, $299,857in preferred seed 3 stock, $680,100 in preferred A-1 stock, $402,390 in preferred series B stock.

33. Martin and Heidi Damsky invested $219,497 in preferred seed 1 stock.

34. Birmingham Venture Investments, LLC invested $263,397 in preferred seed 1 stock.

35. Bronze Valley Corp. invested $263,397 in preferred seed 1 stock.

36. At the time of the issuance of the series B preferred stock in June, 2022, Insight facilitated an offer through Joonko to purchase the Series A shares held by Damsky and Birmingham Venture Investments.

37. Damsky and Birmingham Venture Investments declined the offer to sell their shares of Joonko.

---

[1] Rule 506(b) of Regulation D, under the Securities Act, is a safe harbor that allows companies to sell securities without registering those securities, provided they do not engage in general solicitation or advertising to market the securities and the securities are not sold to more than 35 non-accredited investors.

## Fraud by Raz

### A. Material Misrepresentations about Customers

38. To raise funds from investors, Raz repeatedly the quantity and quality of Joonko's customers and provided investors with falsified testimonials from fake customers praising Joonko's effectiveness.

39. Beginning in at least January 2021, Raz regularly emailed investors to boast about Joonko's purported customer base.

40. For example, in February 2021, Raz sent marketing presentations ("Round A Presentation-1" and "Round A Presentation-2") to investors and potential investors, including the Plaintiffs. These presentations stated that Joonko had more than 120 companies on its platform and highlighted a number of Fortune 500 companies that were supposedly working with Joonko.

41. As Raz knew or recklessly disregarded, these statements were false. In fact, Joonko had far fewer than 120 customers on its platform and purported customers never had business agreements with Joonko.

42. Raz eventually admitted in June 2023, Joonko had no more than 30 companies on its platform, and at least half of the customers Raz reported as Joonko customers were never paying customers.

43. In February 2021, Raz also sent an email to investors and potential investors, including the Plaintiffs, stating that "[o]ur pipeline includes more and more F[ortune] 500 companies[.]"

44. Raz knew, recklessly disregarded, and misled investors because, at the time, Joonko

did not have any Fortune 500 companies as customers and there were few, if any Fortune 500 companies in its pipeline.

45. After receiving the marketing presentations and other information discussed above, questions from at least one investor led Raz to provide a new marketing presentation (the "Round B Presentation") on or around February 28, 2022.

46. The Round B Presentation falsely stated that, in 2021, Joonko had 153 companies on its platform, when it in fact had substantially fewer.

47. The Round B Presentation also included the following fake testimonials:

A. a fake testimonial from a purported customer stating, "Joonko has been immeasurably effective in helping our team attract more diverse candidates, by bringing them directly to our recruiters and keeping track of our hiring progress while advancing these candidates";

B. a fake testimonial from a purported customer stating, "Diversity is at the heart of our culture and Joonko helped us turn this aspiration to a successful reality"; and

C. a fake testimonial from a purported customer stating, "I love the fact that I don't need another dashboard and that relevant candidates are simply flowing into our [Applicant Tracking System], saving me so much time on sourcing. Because of Joonko, I was able to get back to what really matters – hiring great talent."

48. As Raz knew or recklessly disregarded, the purported customers were not customers of Joonko and did not provide these testimonials.

49. In addition to these marketing presentations, Raz sent potential investors fake customer lists and Joonko bank statements on multiple occasions. For instance, in

April 2022, Raz sent emails containing fake customer lists to investors, including the Plaintiffs. These fake customer lists included, among other Fortune 500 companies, the purported customers for whom Raz created the fake testimonials.

50. Also in April 2022, Raz provided at least one investor a fake Joonko bank statement that had been edited to reflect incoming revenue from fake customers, including those for whom she had provided fake testimonials.

51. Because of her role as CEO, including her responsibility for business development, her control over Joonko's bank accounts, and her knowledge of the Joonko platform, Raz knew or recklessly disregarded that the customer lists and bank statements she provided to investors were fake.

52. Raz also touted the quantity and quality of Joonko's customer base on public media websites while she was raising money for Joonko. For example, on January 6, 2023, Raz claimed in a public YouTube video that Joonko was now working with over 200 customers and highlighted the purported customers for whom she created the fake testimonials as Joonko's exemplary customer companies.

53. Raz's public LinkedIn profile as of June 28, 2023 listed several Fortune 500 companies as part of Joonko's customer base.

54. As Raz knew or was reckless in not knowing, including as a result of her responsibility for business development, her statements in the YouTube video and on LinkedIn were false because Joonko had far fewer than 200 customers and its customer base did not include purported customers or the companies listed in Raz's LinkedIn profile.

55. Raz's representations about the quantity and quality of Joonko's customers, as well as the testimonials about customer experience with Joonko's platform, were important to investors, including Plaintiffs, in making their investment decisions. At least some investors would not have invested in Joonko had they known these representations were false. Specifically, Plaintiffs would not have continued to invest in Joonko had they known the representations were false.

B. **Material Misrepresentations about the Number of Candidates**

56. In an email to Plaintiffs and other investors in November 2019, Joonko stated, with Raz's knowledge, that it had "more than 40,000 candidates in [its] talent pool."

57. As Raz knew or was reckless in not knowing, including from her role in platform build out and business development, Joonko had significantly fewer, if any, candidates on its platform in 2019.

58. In the Round A Presentation-1 sent to investors in February 2021, Raz claimed in a section titled "US Largest Pool of Qualified Underrepresented Candidates" that Joonko had 102,970 active monthly candidates on the Joonko platform. The slide also included a map with a specific number of candidates on the Joonko platform in each state, including for example, a representation that there were 4,589 candidates in New York.

59. As Raz knew or was reckless in not knowing from her role in platform build out and business development, Joonko had significantly fewer, if any, candidates on its platform in 2021.

60. In the Round B Presentation provided to investors in February 2022, Raz claimed that Joonko had 185,000 active monthly candidates on its platform in 2021.

61. As Raz knew or was reckless in not knowing, including from her role in platform build out and business development, Joonko had significantly fewer, if any, candidates on its platform in 2021.

62. Raz's representations about the number of candidates were important to investors, including Plaintiffs, in making their investment decisions.

63. For example, these representations were important to the investors, including the Plaintiffs, because Investor C understood that, without enough candidates on the platform looking for work, Joonko could not offer its customers a successful product.

## C. Material Misrepresentations about Revenue

64. In the Round A Presentation-2 sent to investors in February 2021, Raz falsely claimed that Joonko's annual recurring revenue (money that comes in consistently throughout the year from subscriptions) was projected to increase from $520,000 to over $2 million from the end of 2020 through the end of 2021. Raz also projected revenue in 2022 to rise to $4.6 million and up to $8.5 million by the second half of 2023.

65. As Raz knew or was reckless in not knowing, including from her access to Joonko's bank accounts and financial information, these projections were false as Joonko's annual recurring revenue in 2020 did not exceed $100,000, and Joonko's existing customer base and pipeline were insufficient to support her projected revenue growth.

66. In an email dated January 17, 2022, Raz told investors that Joonko had closed $720,000 in sales in the fourth quarter of 2021 and had hit $1.84 million in revenue in 2021.

67. As Raz knew or was reckless in not knowing, including from her access to Joonko's bank accounts and financial information, these numbers were false as neither Joonko's sales nor revenue during 2021 exceeded $100,000.

68. In the Round B Presentation provided to investors in February 2022, Raz claimed Joonko had $2.2 million in annual recurring revenue in 2021, a purported improvement from $250,000 in 2020.

69. As Raz knew or was reckless in not knowing, including from her access to Joonko's bank accounts and financial information, this statement was false because Joonko's annual recurring revenue in 2021 was no more than $100,000.

70. In an email dated April 3, 2022, Raz told investors that Joonko had closed $1.255 million in sales in the first quarter, hitting over $3 million in annual recurring revenue.

71. As Raz knew or was reckless in not knowing, these statements were false as neither Joonko's sales nor annual recurring revenue during 2022 exceeded $100,000.

72. Also in April 2022, Raz provided investors with a falsified bank statement that purported to show large incoming deposits from customers from January 2021 through April 2022, as well as a then-current account balance of $3.7 million and a 2021 account balance as high as $6.8 million.

73. As Raz knew or was reckless in not knowing, including from her access to Joonko's bank accounts and financial information, at least $400,000 of the customer revenue

reported on the falsified bank statement was never received, the account had a then-current balance of under $1 million, and the account never had a balance of over $5.6 million.

74. Raz's representations about Joonko's revenue were important to investors, including Plaintiffs, in making their investment decisions.

**D. Material Misrepresentations about Joonko's Platform**

75. Raz knowingly or recklessly misled investors about the Joonko platform's use of AI and automation, as well as its ability to connect to customer companies' applicant tracking systems to effectively find diverse and underrepresented candidates for Joonko's customers. For example:

76. Raz provided electronically to investors  a presentation from May 2019 titled "Joonko Engineering the Future of [DEI]." This presentation claimed that Joonko's technology was based on "seven different AI algorithms."[2]

77. In marketing materials that Raz emailed to investors, including Plaintiffs, in or around February 2021, Raz claimed that Joonko used "AI-based technology" and described its platform as an "automated recruiting solution." C. In a publicly available interview posted on the website "Unite AI" in March 2023, Raz claimed that Joonko's "proprietary algorithm first uses natural language processing and computer vision to scan public data on the candidates that are referred to us." Raz also claimed that

---

[2] The seven algorithms were identified as: Statistical Analysis, specifically 3-Sigma (variant); NLP, specifically Natural Point of View and Linguistically Informed Model; Machine Learning, specifically K-means, KNN, Perceptron, and Neural Networks.

Joonko used "machine learning to improve the matching process as candidates select the roles they're interested in" and that the matching of candidates was "automated from end to end."

78. Joonko did not actually use these processes. Raz oversaw the build out of the Joonko platform and therefore knew, or recklessly disregarded, that the platform did not work as she described it to investors. For example, Joonko did not have the aforementioned capabilities to connect customers with diverse candidates, and its technology was not as advanced as Raz claimed.

79. Investors, including Plaintiffs, considered the state of Joonko's technology important in deciding whether to invest.

### E. Raz's Fabrication Of Information To Perpetuate And Conceal Her Scheme

80. As described above, Raz created several marketing materials and email updates with false information over several years in order to continue to raise money for Joonko from new and existing investors.

81. In one instance, in connection with Plaintiff investor's due diligence in early 2022, Raz gave the investors the names of individuals at companies as references who were not actually customers of Joonko or purchased materially less services.

82. In addition, Raz falsified documents, including customer contracts and bank statements.

83. For example, in 2023, Raz created fake contracts that appeared to be between Joonko and purported Joonko customers. In creating these fake contracts, Raz used the names of real employees at purported Joonko clients as signatories to the fake contracts. Raz

then forged electronic signatures on the contracts with the purported clients' names using the DocuSign function on the Adobe program.

84. In 2023, Raz provided those falsified contracts to investors when confronted with concerns about the company's performance, as described below.

85. In 2022, Raz also created fake bank statements that showed revenue from additional customers by editing Adobe PDF documents that she then provided to investors during their due diligence process, in order to mislead investors about number of customers and current revenue.

### Severely Reckless Conduct of Individuals on the Board

86. Defendants, Oron and Agmon, failed to establish and/or enforce basic financial reporting controls.

87. Specifically, there were no accounting procedures, no regular reconciliation of accounts, no oversight of accounting staff which contributed to the fraud.

88. Defendants, Oron and Agmon, ignored repeated red flags from internal and external auditors showing severe recklessness.

89. Defendants, Oron and Agmon, had virtually no oversight of Joonko's key financial officers and failed to acknowledge conflicts of Joonko's key financial officers and shareholders.

90. Defendants, Oron and Agmon, failed to respond to obvious signs of financial manipulation.

91. Despite numerous requests and failure to promptly provide requested information, Defendants, Oron and Agmon, contributed to the fraud of Raz.

92. Defendants, Oron and Agmon, ignored dramatic or unexplained changes in revenue or expenses.

93. Defendants, Oron and Agmon, failed to investigate overstated revenue.

94. Defendants, Oron and Agmon, failed to institute and/or properly oversee an audit committee.

95. Defendants, Oron and Agmon, failed to institute policies such as a policy for independent review, a policy for a whistleblower process, and/or a code of ethics for financial reporting to prevent or detect misstatements.

### Indemnification of Board Members by Insight and Veritex

96. In or around May 24, 2021, Oron became a member of the board of directors for Joonko and Vertex agreed to indemnify Oron in his capacity as a director of Joonko.

97. In or around May 31, 2022, Agmon became a member of the board of directors for Joonko and Insight agreed to indemnify Agmon in his capacity as a director of Joonko.

### COUNT ONE
### SECTION 11 STRICT LIABILITY

98. Plaintiffs reallege and readopt the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

99. Plaintiffs were offered and purchased securities of Joonko.

100. Defendants, Oron and Agmon were directors of Joonko pursuant to Section 11 (15 U.S.C. § 77k) of the Securities Act of 1933, as amended (Securities Act).

101. At the time of the purchase, registration statement/offering contained untrue statements of material fact and omitted statements of material fact.

102. The untrue statements of material fact and/or omitted statements of material facts rendered the offering misleading.

103. The Plaintiffs were damaged as a result.

104. Defendants, Oron and Agmon are strictly liable for Plaintiff's damages.

Wherefore, premises considered, Plaintiffs respectfully request the trier of fact to award any and all damages, compensatory and/or punitive, injunctive relief and any different and further relief to which they may be entitled.

## COUNT TWO
## SECTION 12 (a)(2)

105. Plaintiffs reallege and readopt the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

106. Defendants, Oron and Agmon, were sellers who solicited securities in Joonko.

107. Defendants, Oron and Agmon, offered and sold securities in Joonko to the Plaintiffs.

108. Defendants, Oron and Agmon, by use of a means or instrumentality of interstate commerce.

109. Defendants, Oron and Agmon offered and sold securities in Joonko by use of a prospectus or oral communications that contained untrue statements of material fact which and/or omitted statements of material fact.

110.    The untrue statements of material fact and/or omission statements of material fact
were misleading.

111.    The defendants' conduct was negligent and/or severely reckless and an extreme
departure of the standards of ordinary care that was either known to the defendants or
is so obvious that the Defendants must have been aware of it.

112.    Plaintiffs were damaged.

Wherefore, premises considered, Plaintiffs respectfully request the trier of fact to
award any and all damages, compensatory and/or punitive, injunctive relief and any
different and further relief to which they may be entitled.

## COUNT THREE
## SECTION 10(B) CLAIMS

113.    Plaintiffs reallege and readopt the allegations of the foregoing paragraphs of
this Complaint as though fully set forth herein.

114.    Section 10(b) of the Exchange Act makes it illegal for any person directly or
indirectly to use or employ, in connection with the purchase or sale of any security
any manipulative or deceptive device or contrivance that violates the Securities and
Exchange Commission's rules protecting investors. 15 U.S.C. § 78j.

115.    Rule 10b-5—promulgated under Section 10(b)—renders it unlawful to (a) "make
any untrue statement of a material fact or to omit to state a material fact necessary in
order to make the statements made, in the light of the circumstances under which they
were made, not misleading"; (b) "employ any device, scheme, or artifice to defraud";
or (c) "engage in any act, practice, or course of business which operators would

operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5 (2000).

116.   Defendants, Oron and Agmon, made untrue statements of a material fact and/or omitted to state a material fact necessary in order ot make the statements made, in light of the circumstances under which they were made, not misleading.

117.   Defendants, Oron and Agmon employed a device, scheme, or artifice to defraud the Plaintiffs.

118.   Defendants, Oron and Agmon engaged in acts, practices, or course of business which operators would operate as a fraud or deceit upon the Plaintiffs in connection with the purchase or sale of securities.

119.   Defendants, Oron and Agmon made a material omission; with severe reckless disregard in connection with the purchase or sale of a security which Plaintiffs relied on thereby causing economic loss to the Plaintiffs. The material omission caused the economic loss to the Plaintiffs.

120.   The Defendants, Oron and Agmon either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements.

121.   The defendants' conduct was intentional and/or severely reckless and an extreme departure of the standards of ordinary care that was either known to the defendants or is so obvious that the Defendants must have been aware of it.

Wherefore, premises considered, Plaintiffs respectfully request the trier of fact to award any and all damages, compensatory and/or punitive, injunctive relief and any different and further relief to which they may be entitled.

## COUNT FOUR
## RESPONDEAT SUPERIOR

122. Plaintiffs reallege and readopt the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

123. Defendant Oron was employed by Veritex and all acts and omissions related to his position as a board member for Joonko were directed by Veritex and within the line and scope of his employment with Veritex.

124. Defendant Agmon was employed by Insight and all acts and omission related to his position as a board member for Joonko were directed by Insight and within the line and scope of his employment with Insight.

125. Plaintiff makes claims against Veritex and Insight under the theory of respondeat superior.

Wherefore, premises considered, Plaintiffs respectfully request the trier of fact to award any and all damages, compensatory and/or punitive, injunctive relief and any different and further relief to which they may be entitled.

## COUNT FIVE
## INDEMNIFICATION

126. Plaintiffs reallege and readopt the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

127. Defendant Veritex contracted to indemnify Defendant Oron.

128.   Defendant Insight contracted to indemnify Defendant Agmon.

129.   Plaintiffs are third party beneficiaries to said indemnification contracts.

130.   Plaintiffs hereby demand indemnification from the Defendant Veritex and
Defendant Insight for the wrongdoings of Defendants Oron and Agmon.

Wherefore, premises considered, Plaintiffs respectfully request the trier of fact to
award any and all damages, compensatory and/or punitive, injunctive relief and any
different and further relief to which they may be entitled.

Brandy Murphy Lee (MUR039)
Attorney for Plaintiffs

**OF COUNSEL:**

**LEE LAW FIRM, LLC**
**2100 First Avenue North**
**Suite 500**
**Birmingham, Alabama 35203**
**205-328-9445 Ext 405**
brandy@leelawfirmllc.com

**THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**

Brandy Murphy Lee (MUR039)
Attorney for Plaintiffs

**Please serve the Defendants by Certified Mail and/or through the Hague Service
Convention, Return Receipt Requested, at the following addresses:**

**Yanai Oron**
**1 HaShikma Street**

P.O. B89, Savyon, 56530, Israel

Liad Agmon
c/o Insight Partners
1114 Avenue of the Americas, 36th Floor
New York, NY 10036

Vertex VI Fund L.P.
28 HAARBA'A ST. HAGAG NORTH TOWER
29th Floor
Tel Aviv – Yafo 6473925

Insight Partners XII, L.P.
Box 309
Ugland House
Grand Cayman, Cayman Islands KY1-1104

Insight Partners (Cayman) XII, L.P.
Box 309
Ugland House
Grand Cayman, Cayman Islands KY1-1104

Insight Partners (Delaware) XII, L.P.
1114 Avenue Of The Americas
36th Floor
New York, New York 10036

Insight Partners XII (Co-Investors), L.P.
Box 309, Ugland House
Grand Cayman, E9, KY1-110

Insight Partners XII (Co-Investors)(B), L.P.
Box 309, Ugland House
Grand Cayman, E9, KY1-110

Insight Partners (EU) XII, S.C.Sp.
15, Boulevard F.W. Raiffeisen

Luxembourg, Luxembourg L-2411

Grace Software Holdings III, LLC
1209 Orange Street
Wilmington, Delaware 19801